UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THOMAS WELLINGTON SIKES,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br><br>Defendant. | Civil Action No. 25-2922 (JMC) |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF**

# TABLE OF CONTENTS


Table of Contents ..... i

Table of Authorities ..... ii

Background ..... 1

I. FOIA Request No. 1587112-000. ..... 1

II. FOIA Request No. 1587174-001. ..... 2

III. FOIA Request Nos. 1587080-000. ..... 3

IV. Procedural History. ..... 3

Legal Standards ..... 4

Argument ..... 5

I. The FBI's Search Was Reasonable. ..... 5

A. Search for FOIA Request Nos. 1587174-001 and 1587080-000. ..... 7

B. Search for FOIA Request No. 1587112-000. ..... 9

II. FBI Properly Applied FOIA Exemptions. ..... 9

A. The Withholdings Pursuant to Exemption 3 Are Appropriate. ..... 10

B. The Withholdings Pursuant to Exemption 5 Are Appropriate. ..... 11

C. The Withholdings Pursuant to Exemption 6 and 7(C) Are Appropriate. . 13

D. The Withholdings Pursuant to 7(E) Are Appropriate. ..... 17

III. FBI Released All Non-Exempt and Segregable Records. ..... 19

Conclusion ..... 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU v. Dep't of Just.*,
655 F.3d 1 (D.C. Cir. 2011) ........ 15
*Advancement Project v. Dep't of Homeland Sec.*,
549 F.Supp.3d 128 (D.D.C., 2021) ........ 14
*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........ 4
*Beck v. Dep't of Just.*,
997 F.2d 1489 (D.C. Cir. 1993) ........ 17
*Blackwell v. FBI*,
646 F.3d 37 (D.C. Cir. 2011) ........ 17, 18
*Brayton v. Off. of U.S. Trade,*
*Rep.*, 641 F.3d 521 (D.C. Cir. 2011) ........ 4
*Brown v. Dep't of Just.*,
742 F. Supp. 2d 126 (D.D.C. 2010) ........ 6
*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........ 4
*Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*,
600 F. Supp. 114 (D.D.C. 1984) ........ 12
*Davis v. Dep't of Just.*,
968 F.2d 1276 (D.C. Cir. 1992) ........ 16
*Dep't of Def. v. Fed. Lab. Rels. Auth.*,
("FLRA"), 510 U.S. 487 (1994) ........ 9, 16
*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
532 U.S. 1 (2001) ........ 12
*Dep't of Just. v. Tax Analysts*,
492 U.S. 136 (1989) ........ 9
*Dep't of Labor*,
478 F. Supp. 2d 77 (D.D.C. 2007) ........ 5, 10
*Dep't of State v. Wash. Post Co.*,
456 U.S. 595, (1982) ........ 14
*Evans v. Fed. Bureau of Prisons*,
951 F.3d 578 (D.C. Cir. 2020) ........ 20
*Flyers Rts. Educ. Fund, Inc. v. FAA*,
71 F.4th 1051 (D.C. Cir. 2023) ........ 20, 21
*Founding Church of Scientology v. NSA*,
610 F.2d 824 (D.C. Cir. 1979) ........ 6
*Gilliam v. Dep't of Just.*,
128 F. Supp. 3d 134 (D.D.C. 2015) ........ 17
*Gilman v. Dept of Homeland Sec.*,
32 F. Supp. 3d 1 (D.D.C. 2014) ........ 14

*Greenberg v. Dep't of Treasury*,
10 F. Supp. 2d 3 (D.D.C. 1998) ........ 5
*In re Sealed Case*,
121 F.3d 729 (D.C. Cir. 1997) ........ 12
*Info. Corp. v. Dep't of Interior*,
976 F.2d 1429 (D.C. Cir. 1992) ........ 12
*Jud. Watch, Inc. v. Dep't of Just.*,
20 F.4th 49 (D.C. Cir. 2021) ........ 12
*Jud. Watch, Inc. v. Rossotti*,
285 F. Supp. 2d 17 (D.D.C. 2003) ........ 5
*Kowalczyk v. Dep't of Just.*,
73 F.3d 386 (D.C. Cir. 1996) ........ 6
*Larson v. Dep't of State*,
565 F.3d 857 (D.C. Cir. 2009) ........ 5
*Machado Amadis v. Dep't of State*,
971 F.3d 364 (D.C. Cir. 2020) ........ 21
*Marshall v. FBI*,
802 F. Supp. 2d 125 (D.D.C. 2011) ........ 17
*Mayer Brown LLP v. IRS*,
562 F.3d 1190 (D.C. Cir. 2009) ........ 18
*McCutchen v. Dep't of Health & Hum. Servs.*,
30 F.3d 183 (D.C. Cir. 1994) ........ 9
*McGehee v. CIA*,
697 F.2d 1095 (D.C. Cir. 1983) ........ 4
*McGehee v. Dep't of Just.*,
800 F. Supp. 2d 220 (D.D.C. 2011) ........ 17
*Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131 (D.D.C. 2011) ........ 4, 5
*Mil. Audit Project v. Casey*,
656 F.2d 724 (D.C. Cir. 1981) ........ 5, 10
*Nat'l Archives & Records Admin. v. Favish,*
541 U.S. 157 (2004) ........ 15, 16
*Nat'l Ass'n of Crim. Def. Lawyers v. Dep't of Just.*,
844 F.3d 246 (D.C. Cir. 2016) ........ 20
*Nat'l Ass'n of Retired Federal Employees v. Horner*,
879 F.2d 873 (D.C. Cir. 1989) ........ 17
*Nat'l Lab. Rels. Bd. v. Sears, Roebuck & Co.*,
421 U.S. 132 (1975) ........ 11, 13
*Oglesby v. Dep't of Army*,
920 F.2d 57 (D.C. Cir. 1990) ........ 6
*Porup v. CIA*,
997 F.3d 1224 (D.C. Cir. 2021) ........ 21
*Prison Legal News v. Samuels*,
787 F.3d 1142 (D.C. Cir. 2015) ........ 15
*Pub. Citizen Health Rsch. Grp. v. FDA*,
185 F.3d 898 (D.C. Cir. 1999) ........ 10

*Pub. Emps. for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.–Mexico*,
740 F.3d 195 (D.C. Cir. 2014) ........ 14
*Rockwell Int'l Corp. v. Dep't of Just.*,
235 F.3d 598 (D.C. Cir. 2001) ........ 11, 12
*SafeCard Servs., Inc. v. SEC*,
926 F.2d 1197 (D.C. Cir. 1991) ........ 5, 6
*Schrecker v. Dep't of Just.*,
349 F.3d 657 (D.C. Cir. 2003) ........ 6
*Spirko v. U.S. Postal Serv.*,
147 F.3d 992 (D.C. Cir. 1998) ........ 10
*Steinberg v. Dep't of Just.*,
23 F.3d 548 (D.C. Cir. 1994) ........ 6, 7
*Truitt v. Dep't of State*,
897 F.2d 540 (D.C. Cir. 1990) ........ 6
*Valencia-Lucena v. Coast Guard*,
180 F.3d 321 (D.C. Cir. 1999) ........ 6
*Vaughn v. Rosen*,
484 F.2d 820 (D.C. Cir. 1973) ........ 10
*Watkins Law & Advoc. PLLC v. Dep't of Just.*,
78 F.4th 436 (D.C. Cir. 2023) ........ 5
*Weisberg v. Dep't of Just.*,
627 F.2d 365 (D.C. Cir. 1980) ........ 6
*Weisberg v. Dep't of Just.*,
745 F.2d 1476 (D.C. Cir. 1984) ........ 6
*Wildlife v. Dep't of Interior*,
314 F. Supp. 2d 1 (D.D.C. 2004) ........ 5
*Wildlife v. U.S. Border Patrol*,
623 F. Supp. 2d 83 (D.D.C. 2009) ........ 6
*Wolf v. CIA*,
473 F.3d 370 (D.C. Cir. 2007) ........ 10

**Statutes**

5 U.S.C. § 552 ........ passim
5 U.S.C. § 552(b) ........ 9
5 U.S.C. § 552(b)(3) ........ 10
5 U.S.C. § 552(b)(5) ........ 11
5 U.S.C. § 552(b)(7)(A) ........ 13
28 USC §§ 533, 534 ........ 14
50 U.S.C. § 3024(h)(1) ........ 11

**Rules**

Fed. R. Civ. P. 56(a) ........ 4

**Regulations**

28 CFR § 0.85 .......... 14

**Other Authorities**

Executive Order 12,333 .......... 14

This case involves three Freedom of Information Act ("FOIA") requests submitted by *pro se* Plaintiff Thomas Wellington Sikes, ("Plaintiff"). Each of Plaintiff's FOIA requests involve records related to the 1996 investigation of the suicide of Navy Admiral J. M. Boorda. As outlined below, the Federal Bureau of Investigation ("FBI" or "Defendant") conducted searches reasonably calculated to locate all records potentially responsive to Plaintiff's FOIA requests. Further, upon processing the results of its searches, the FBI only withheld information exempt from disclosure pursuant FOIA Exemptions 3, 5, 6, 7(C), and 7(E). Accordingly, the FBI respectfully submits that it is entitled to summary judgment in its favor. The FBI submits the Declaration of its Section Chief of Record/Information Dissemination Section, Melissa A. Corcoran ("Corcoran Decl."), and exhibits referenced therein in support of this motion.

## BACKGROUND

The historical background of Plaintiff's decade-long effort to obtain records related to Admiral Boorda's unfortunate passing is set forth in the Complaint (ECF No. 1, "Compl."), and Defendant's Statement of Facts Not in Genuine Dispute, filed concurrently with this motion. Defendant limits its discussion here to those facts relevant to the issues presented in this motion.

### I. FOIA Request No. 1587112-000.

On or about March 15, 2023, Plaintiff submitted a FOIA request to the FBI seeking a copy of all information located on every tab of the FBI's FOIA Document Processing System ("FDPS") for FOIA Request No. 1479938-000. *See* Compl. (ECF No. 1) ¶ 27, *See also* Corcoran Decl. Ex. H. FOIA Request No. 1479938-000 was an October 28, 2020 FOIA request, previously submitted to the FBI on behalf of Plaintiff's private investigator seeking any and all records related to the investigation of the suicide of Navy Admiral J. M. Boorda. *See* Compl. (ECF No. 1) ¶ 13.

On or about March 22, 2023, FBI assigned Request No. 1587112-000 to Plaintiff's March 15, 2023 FOIA request. *See* Corcoran Decl. Ex. I. On or about June 24, 2024, the FBI issued its

final response to Request No. 1587112-000, advising Plaintiff that FBI reviewed 64 pages of records in response to Plaintiff's FOIA request and released 62 pages in full or in part with certain information exempt from disclosure pursuant to FOIA Exemptions 5 U.S.C. § 552 (b)(3), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E). *See* Corcoran Decl. Ex. L. Plaintiff appealed the FBI's final response to Request No. 1587112-000 to the Department of Justice, Office of Information Policy on or about July 26, 2024. *See* Corcoran Decl. Ex. M. On or about August 28, 2025, the Office of Information Policy informed Plaintiff that it was affirming the FBI's response to Request No. 1587112-000. *See id.*

## II. <u>FOIA Request No. 1587174-001.</u>

On or about May 22, 2024, Plaintiff submitted a FOIA request to FBI seeking all records originally created, received, or maintained by the FBI's Special Search Team in Quantico regarding the death of Admiral Boorda, which indicated that the FBI's search should not be limited to the FBI's Central Records System ("CRS"). *See* Compl. (ECF No. 1) ¶ 27, *See also* Corcoran Decl. Ex. S. On or about June 5, 2024, FBI assigned Request No. 1587174-001 to Plaintiff's May 22, 2024 FOIA request. *See* Corcoran Decl. Ex. T. This request was similar to one of Plaintiff's previous FOIA requests except it expounded on Plaintiff's contentions with a search limited to the FBI's Central Records System ("CRS"). *See* Corcoran Decl. Ex. S. On or about September 30, 2024, Plaintiff advised FBI that he was narrowing his request to a copy of a Naval Criminal Investigative Service ("NCIS") Report of Investigation of the suicide of Navy Admiral Boorda. *See* Corcoran Decl. Ex. V.

On or about January 16, 2025, the FBI issued its final response to Request No. 1587174-001 by letter, informing Plaintiff the FBI reviewed 42 pages and 21 pages were released in full or part, with certain information exempted from disclosure pursuant to FOIA Exemptions 5 U.S.C. § 552 (b)(6), (b)(7)(C), and (b)(7)(E). *See* Corcoran Decl. Ex. W. The final response also informed

Plaintiff that the FBI located documents that originated with other government entities and those records were referred to the Naval Criminal Investigative Service which would review the records and respond to Plaintiff directly. *See id.* On or about February 6, 2025, Plaintiff appealed the final response for Request No. 1587174-001 to the Office of Information Policy. *See* Corcoran Decl. Ex. X. The Office of Information Policy acknowledged Plaintiff's appeal on or about February 13, 2025. *See id.*

## III. FOIA Request Nos. 1587080-000.

On or about March 14, 2023, Plaintiff submitted a FOIA request to the FBI seeking all records previously identified as potentially responsive to FOIA Request No. 1479938-000. *See* Corcoran Decl. Ex. A FOIA Request No. 1479938-000 was an October 28, 2020 FOIA request, previously submitted to the FBI on behalf of Plaintiff's private investigator seeking any and all records related to the investigation of the suicide of Navy Admiral J. M. Boorda. *See* Compl. (ECF No. 1) ¶ 13. On or about March 23, 2023, FBI assigned Request No. 1587080-00 to Plaintiff's March 14, 2023 FOIA request. *See* Corcoran Decl. Ex. B. On or about February 22, 2024, Plaintiff narrowed Request No. 1587080-00 to eleven pages identified as "Exhibit 6" within the Naval Criminal Investigative Service ("NCIS") report of investigation of the suicide of Navy Admiral Boorda. *See* Compl. (ECF No. 1) ¶ 6; *see also* Corcoran Decl. Ex. E. On or about March 13, 2024, FBI notified Plaintiff by letter that FBI conducted a search in its Central Records System for the record Plaintiff sought but did not locate records responsive to Plaintiff's FOIA request. *See* Corcoran Decl. Ex. F.

## IV. Procedural History.

Plaintiff initiated the instant civil action on August 28, 2025, seeking judicial relief for his FOIA request Nos. 1587080-000, 1587174-001, and 1587112 . *See* Compl. (ECF No. 1) ¶ 51. After litigation began, FBI conducted an additional search of its CRS for records potentially

responsive to FOIA Request Nos. 1587080-000 and 1587174-001. *See* Corcoran Decl. ¶¶ 19, 24-30; *see also* Compl. (ECF No. 1) ¶ 54. Plaintiff has indicated that he does not want the FBI to obtain records from the Naval Criminal Investigation Service but seeks records within FBI's possession. *See* Pl.'s Mot. to Compel (ECF No. 11) at 4. The FBI did not locate the Exhibit Plaintiff seeks. *See* Corcoran Decl. ¶ 29. For FOIA Request No. 1587112, the FBI withheld information exemption from disclosure pursuant to FOIA Exemptions 5 U.S.C. § 552 (b)(3), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E). *See* Corcoran Decl. Ex. L.

## LEGAL STANDARDS

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. A genuine issue is one that "might affect the outcome of the suit under the governing law." *Liberty Lobby*, 477 U.S. at 248. Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.*

"[T]he vast majority of FOIA cases can be resolved on summary judgment[.]" *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment."). A government agency may obtain summary judgment in a FOIA case by relying on "relatively detailed" and "nonconclusory" declarations. *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983). "[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations

when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Rsch*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

Courts give agency declarations "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted).

## ARGUMENT

### I. The FBI's Search Was Reasonable.

Under FOIA, an agency must undertake a "good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Watkins Law & Advoc. PLLC v. Dep't of Just.*, 78 F.4th 436, 442 (D.C. Cir. 2023) (cleaned up). A search is not inadequate merely because it failed to "uncover[] every document extant." *SafeCard*, 926 F.2d at 1201; *see also Jud. Watch, Inc. v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) (noting that "[p]erfection is not the standard by which the reasonableness of a FOIA search is measured"). An agency may search for responsive records in the way its records systems are indexed. *Greenberg v. Dep't of Treasury*, 10 F. Supp. 2d 3, 13 (D.D.C. 1998).

Where an agency affidavit attests that a reasonable search was conducted, the agency is entitled to a presumption of good faith. *Defs. of Wildlife v. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004). "An agency fulfills its obligations under FOIA if it can demonstrate beyond

material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). FOIA does not require that an agency search every division or field office on its own initiative in response to a FOIA request if responsive documents are likely to be located in a particular place. *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 388 (D.C. Cir. 1996). Nor does FOIA require an agency to search every record system. *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

"To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009). However, "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (emphasis omitted). The process of conducting an adequate search for documents requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise," and it is "hardly an area in which the courts should attempt to micro manage the executive branch." *Schrecker v. Dep't of Just.*, 349 F.3d 657, 662 (D.C. Cir. 2003).

"[T]he sufficiency of the agency's identification or retrieval procedure" must be "genuinely in issue" for summary judgment in the agency's favor to be inappropriate based on the adequacy of the search. *Weisberg v. Dep't of Just.*, 627 F.2d 365, 370 (D.C. Cir. 1980) (quoting *Founding Church of Scientology v. NSA*, 610 F.2d 824, 836 (D.C. Cir. 1979)). A plaintiff "cannot rebut the good faith presumption" afforded to an agency's supporting affidavits "through 'purely speculative claims about the existence and discoverability of other documents.'" *Brown v. Dep't of Just.*, 742 F. Supp. 2d 126, 129 (D.D.C. 2010) (quoting *SafeCard*, 926 F.2d at 1200); *see also Steinberg*

*v. Dep't of Just.*, 23 F.3d 548, 552 (D.C. Cir. 1994) ("mere speculation that as yet uncovered documents may exist" is insufficient to defeat summary judgment).

**A. Search for FOIA Request Nos. 1587174-001 and 1587080-000.**

Here, because FOIA Request Nos. 1587174-001 and 1587080-000 both sought Exhibit 36 to the Naval Criminal Investigative Service Report of Investigation concerning Admiral Boorda's death, the FBI conducted a coterminous search responsive to both requests. FBI searched its CRS system which is an extensive system containing investigative, intelligence, personnel, administrative, and general FBI files. *See* Corcoran Decl. ¶ 22. The CRS spans the entire FBI organization, encompassing records from FBI headquarters, field offices, and legal attaché offices worldwide. *See id*. "The broad array of CRS file classification categories includes types of criminal conduct and investigations conducted by the FBI, as well as categorical subjects pertaining to counterterrorism, intelligence, counterintelligence, personnel, and administrative matters." *Id.* ¶ 23. For identification and retrieval purposes across when an FBI case file is opened, it is assigned a Universal Case File Number consisting of three sequential components: (a) the CRS file classification number; (b) the abbreviation of the FBI office of origin (OO) opening the file; and (c) the assigned individual case file number for the particular subject matter. *See id*. Within each case file, pertinent documents of interest are "serialized," or assigned a number in the order which the document is added to the file, typically in chronological order. *Id.*

The general indices to the CRS, comparable to a digital version of a library card catalog, function as the key to locating records. *See id*. ¶ 24. FBI personnel index information in the CRS by individual (person), organization (entity, place, or thing), or activity or event (e.g., terrorist attack or bank robbery) when information is deemed of sufficient significance to warrant indexing for future retrieval. *See id*. Information available by search of the general indices fall into two categories: the Main Index Entry and the Reference Index Entry. *See id*. FBI personnel access the

general indices through Sentinel, the FBI's case management system. *See id.* ¶ 25. FBI personnel rely on Sentinel to locate records and other types of documents to fulfill essential functions, such as conducting criminal, counterterrorism, and national security investigations; conducting background investigations; performing citizenship and employment queries; and administering security screenings, to include presidential protection. *Id.* ¶ 26. Sentinel's index search methodology and function allow FBI personnel to query the CRS for indexed subjects in case files. *Id.*

Because the CRS is the FBI's comprehensive repository of investigative and administrative records, the FBI reasonably determined that records responsive to Plaintiff's FOIA requests would likely be located within that system. *See id.* ¶ 27. This determination is reasonable because CRS contains records from FBI headquarters, field offices, and satellite offices worldwide. *See id.* ¶ 22. FBI searched the CRS automated indices using Sentinel and Automated Case Support ("ACS") (a system that pre-dated Sentinel). *See* Corcoran Decl. ¶ 28. In addition, because the requested subject matter predates and/or overlaps the implementation of both Sentinel and its ACS , a manual indices search was required. *See id.*

For Sentinel and ACS, the FBI conducted a search for Main and Reference Entries using the terms "Boorda, Jeremy," "Boorda, JM," "Boorda, J," "Boorda, Admiral," "Jeremy Boorda," "JM Boorda," "J Boorda," and "Admiral Boorda" while employing a search cut-off date of March 12, 2026. *See id.* ¶ 29. This search did not locate records responsive to Plaintiff's FOIA request. *See id.*

Plaintiff is expected to argue the FBI should have searched its Quantico office based on an excerpt from the NCIS report of the death of Admiral Boorda but Plaintiff's argument is misplaced. *See id.* ¶ 30. FBI determined that it is unlikely that records would exist outside of CRS. *See id.* FBI

records show that the NCIS report was provided to the FBI however, this report did not contain the exhibits referenced in the report. *See id*. There is no basis for the FBI to conclude that a search elsewhere would reasonably be expected to locate responsive records subject to the FOIA. *See id*.

**B. Search for FOIA Request No. 1587112-000.**

For Request No. 1587112-000, which sought a copy of all information located on every tab of the FBI's FOIA Document Processing System (FDPS) for FOIA Request No. 1479938-000 (the FOIA Request submitted by Plaintiff's private investigator), FBI searched its FDPS. *See* Corcoran Decl. ¶¶ 31-32. Specifically, on or about March 22, 2023, the FBI conducted a search of FDPS via the "Retrieval" function for any FOIA requests received by the FBI from Plaintiff. *See id*. ¶ 33. The Retrieval feature of FDPS allows employees to search FDPS by entering search criteria in search fields to retrieve a hit-list of received requests. *See id*. This search located FOIA Request No. 1479938-000, which was processed according to the new Request No. 1587112-000. *See id*.

In sum, the FBI conducted searches in response to Plaintiff's FOIA requests that were reasonably calculated to locate the information Plaintiff sought. The FBI's search is uncontroverted, and FBI is entitled to summary judgment as a matter of law.

**II. <u>FBI Properly Applied FOIA Exemptions.</u>**

FOIA does not allow the public to have unfettered access to government files. *McCutchen v. Dep't of Health & Hum. Servs.*, 30 F.3d 183, 184 (D.C. Cir. 1994). Although disclosure is the dominant objective of FOIA, there are several exemptions to the statute's disclosure requirements. *Dep't of Def. v. Fed. Lab. Rels. Auth. ("FLRA")*, 510 U.S. 487, 494 (1994). FOIA requires that an agency release all records responsive to a properly submitted request unless such records are protected from disclosure by one or more of the Act's nine exemptions. 5 U.S.C. § 552(b); *Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 150–51 (1989). To protect materials from disclosure, the

agency must show that they come within one of the FOIA exemptions. *Pub. Citizen Health Rsch. Grp. v. FDA*, 185 F.3d 898, 904 (D.C. Cir. 1999). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007). Additionally, although a *Vaughn* index is a common device used by agencies to meet their burden of proof, "the Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *CREW*, 478 F. Supp. 2d at 80 (quoting *Mil. Audit Project*, 656 F.2d at 738); *see also Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 998 n.4 (D.C. Cir. 1998); *see also Vaughn v. Rosen*, 484 F.2d 820, 828 (D.C. Cir. 1973).

The following sections demonstrate that as shown in the Corcoran Declaration and documents referenced therein, the FBI properly withheld information exempt from disclosure pursuant to FOIA Exemptions 3, 5, 6, 7(C), and 7(E).

**A. The Withholdings Pursuant to Exemption 3 Are Appropriate.**

FOIA Exemption 3 exempts from disclosure information which is: "specifically exempted from disclosure by statute . . . if that statute (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (A)(ii) establishes particular criteria from withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the Open FOIA Act of 2009, specifically cites to this paragraph." 5 U.S.C. § 552(b)(3); *see also* Cocoran Decl. ¶ 38. The FBI asserted Exemption 3 to withhold information pursuant to Section 102A(i)(1) of the National Security Act of 1947 (NSA), as amended by the Intelligence Reform and Terrorism Prevention Act of 2004 (IRTPA). *Id.* ¶¶ 37, 39.

This statute provides that the Director of National Intelligence (DNI) "shall protect, and shall establish and enforce policies to protect, intelligence sources and methods from unauthorized disclosure. *Id*. On its face, this federal statute leaves no discretion to agencies about withholding from the public information about intelligence sources and methods. Thus, the protection afforded to intelligence sources and methods by 50 U.S.C. § 3024(h)(1) is absolute. *Id*. FBI applied Exemption 3 to protect a block of information containing one or more intelligence file classification number(s) discussed within deliberative FOIA processing notes related to the FBI's search for *potentially* responsive records for Request No. 1587112. *See id*. ¶ 42. Non-public FBI intelligence file classifications are an intelligence method used to identify specific categories of information. *See id*.

**B. The Withholdings Pursuant to Exemption 5 Are Appropriate.**

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5); *see also* Cocoran Decl. ¶ 43. This exemption shields documents of the type that would be privileged in the civil discovery context, including materials protected by the attorney-client privilege, the attorney work-product doctrine, and the deliberative-process privilege. *Nat'l Lab. Rels. Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *Rockwell Int'l Corp. v. Dep't of Just.*, 235 F.3d 598, 602 (D.C. Cir. 2001). The Exemption 5 withholdings invoke the deliberative-process privilege.

The FBI applied Exemption 5 to the FBI protected privileged, deliberative information in two documents consisting of FOIA processing notes (Bates 1-2, 4-10) and a search slip (Bates 63-64). *See* Cocoran Decl. ¶ 46. The documents are internal documents exchanged within the FBI. *See id*. Specifically, the information was exchanged between FOIPA analysts and their experts, supervisors, and other FBI personnel including record custodians and operational staff in an effort

to determine the likelihood of records being located at a specific location, discussing the potential responsiveness of certain records, the potential harms in disclosure and when harm was found to exist, discussing the best way to protect the exempt information (such as which exemptions should be applied.) *Id*. The discussions fall within Exemption 5 because they consist of discussions made 'in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made." *Petrol. Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992). Thus, the FBI properly withheld information protected from disclosure pursuant to this exemption.

In addition, the information withheld under FOIA exemption 5 would cause foreseeable harm if made public. The deliberative process privilege protects "materials that would reveal 'advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997). This privilege rests "on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001); *accord Jud. Watch, Inc. v. Dep't of Just.*, 20 F.4th 49, 54 (D.C. Cir. 2021). The "ultimate aim" of the deliberative process privilege set forth in Exemption 5 is to "prevent injury to the quality of agency decisions." *Petrol. Info.*, 976 F.2d at 1433–34 (internal quotations omitted). "There should be considerable deference to the [agency's] judgment as to what constitutes . . . 'part of the agency give-and-take—of the deliberative process—by which the decision itself is made'" because the agency is best situated "to know what confidentiality is needed 'to prevent injury to the quality of agency decisions[.]'" *Chem. Mfrs.*

*Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) (quoting *Sears*, 421 U.S. at 151).

The FBI reasonably determined disclosure would curtail proper deliberations during the processing of FOIA requests and create public confusion as to the FBI's final FOIA decisions. *See* Cocoran Decl. ¶ 49. This is a foreseeable harm that is explicitly prevented by proper application of Exemption 5. *See id* ¶¶ 49 -51.

**C. The Withholdings Pursuant to Exemption 6 and 7(C) Are Appropriate.**

FOIA provides that certain records or information compiled for law enforcement purposes are exempt from disclosure. 5 U.S.C. § 552(b)(7)(A)–(F). Relevant here, FOIA Exemption 7(C) exempts from disclosure "records or information compiled for law enforcement purposes [when disclosure] could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Exemption 6 permits the withholding of "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Here, FBI properly applied Exemption 6 in conjunction with Exemption 7(C) to protect from disclosure the name and other identifying information connected to FBI special agents and professional staff, third parties merely mentioned in records, and Naval Criminal Investigative Service Personnel. *See* Cocoran Decl. ¶ 37.

1. Exemption 6 and 7(C).

The FBI properly withheld identifying information within its records that "would constitute a clearly unwarranted invasion of personal privacy[.]" 5 U.S.C. § 552(b)(6). The relevant records included administrative records responsive to Plaintiff's request ( Cocoran Decl. ¶¶ 56, 58-59), and six documents, Bates 67, 72, 79, 107 113-116, connected to the Naval Criminal Investigative Service investigation ( Cocoran Decl. ¶ 60). The term "similar files" in Exemption (b)6 include

"detailed Government records on an individual which can be identified as applying to that individual." *Dep't of State v. Wash. Post Co*., 456 U.S. 595, 602, (1982) (quoting H.R. Rep. No. 1497). Exemption 6 may be utilized so long as the privacy interest implicated is not de minimis. *See Gilman v. Dept of Homeland Sec*., 32 F. Supp. 3d 1, 10 (D.D.C. 2014).

"To fall within Exemption 7, documents must first meet a threshold requirement: that the records were 'compiled for law enforcement purposes.'" *Pub. Emps. for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.–Mexico*, 740 F.3d 195, 202–03 (D.C. Cir. 2014) (internal citation omitted). "Pursuant to 28 USC §§ 533, 534, and Executive Order 12,333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations (AGG-DOM) and 28 CFR § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and further the foreign intelligence objectives of the United States. Under this investigative authority, the FBI compiled the records at issue as a result of its assistance to NCIS." Corcoran Decl. ¶ 61. As relevant here, the FBI assisted NCIS in an investigation into the suicide of Admiral Jeremy Boorda. *Id*. Specifically, the FBI's Special Search Techniques Team assisted to locate the evidence from the garden area of the Admiral's residence. *Id*. Considering these records were compiled to document the FBI's assistance to investigate potential crimes, the FBI determined the records were compiled for a law enforcement purpose. *Id*.

An agency such as the FBI whose "principal function is law enforcement" is entitled to deference when it claims that records were compiled for law enforcement purposes. *Advancement Project v. Dep't of Homeland Sec*., 549 F.Supp.3d 128, 143 (D.D.C., 2021) (internal citation

omitted). Moreover, Plaintiffs fail to establish "the public interest sought to be advanced" in the release of the information "is a significant one, an interest more specific than having the information for its own sake [and] . . . the requester must establish more than a bare suspicion in order to obtain disclosure." *Nat'l Archives & Records Admin. V. Favish*, 541 U.S. 157, 172, 174 (2004). Plaintiff cannot meet this burden.

While Exemption 7(C), like Exemption 6, protects private information, "Exemption 7(C) is more protective of privacy than Exemption 6 and thus establishes a lower bar for withholding material." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1146 n.5 (D.C. Cir. 2015) (internal quotation marks omitted) (quoting *ACLU v. Dep't of Just.*, 655 F.3d 1, 6 (D.C. Cir. 2011).

For FBI's Special Agents, the FBI notes that assignments to any particular investigation are not by choice. *See* Cocoran Decl. ¶ 57. Identifying information is withheld to protect FBI Special Agents as individuals, from unnecessary, unofficial questioning as to the conduct of this or other investigations/investigative activities, whether or not they are currently employed by the FBI. *See id*. Special Agents conduct official inquiries into various criminal and national security violation cases. *Id*. The publicity associated with the release of an agent's identity in connection with a particular investigation could trigger hostility toward a particular agent. *Id*. During an investigation, a Special Agent may engage with all strata of society, conducting searches and making arrests, both of which result in reasonable but nonetheless serious disturbances to people and their lives. *Id*. Individuals targeted by such investigations, and/or those sympathetic to those targeted, could seek to inflict violence on Special Agents based on their participation in an investigation. *Id*.

The relevant FBI professional staff were assigned to handle tasks related to Plaintiff's FOIA request seeking a copy of all information located on every tab of the FDPS entry for FOIA

Request No.1479938-000. *See id.* ¶ 58. Similar to FBI Special Agents, these FBI employees could be targeted for reprisal based on their involvement in specific investigative activities. *Id.* Furthermore, these FBI professional staff were, and possibly are, in positions of access to information regarding official law enforcement investigations and therefore could become targets of harassing inquiries for unauthorized access to investigations if their identities were released. *Id.* Thus, these individuals maintain substantial privacy interests in not having their identities disclosed. *Id.* The FBI applied the same rational to protect the identifying information connected to personnel from the Naval Criminal Investigative Service. *See id.* ¶ 60.

Third-party individuals maintain similar substantial and legitimate privacy interests in not having identifying information disclosed. Cocoran Decl. ¶ 59. Although these individuals were merely mentioned in FBI records, disclosure of his/her identity would subject this individual to possible harassment or criticism and focus derogatory inferences and suspicion on them. *See id.* This is because connection to FBI records carries an extremely negative connotation. *See id.*

The Court must balance the individual's privacy interest against the public interest, considering only the public interest "that focuses on the citizens' right to be informed about "what their government is up to." *Davis v. Dep't of Just.*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (cleaned up). Further, it is a FOIA requester's obligation to articulate a significant public interest sufficient to outweigh the individual's privacy interest. *See Nat'l Archives & Records Admin.* 541 U.S. at 172 (2004). However, the "only relevant public interest in the FOIA balancing analysis" is "the extent to which disclosure of the information sought would she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Dep't of Def. v. Fed. Lab. Rel. Auth.*, 510 U.S. 487, 497, (1994) (cleaned up). Here, Plaintiff cannot point to any public interest in the disclosure of third party information contained in administrative

records related to processing Plaintiff's FOIA request, or the six documents connected to the Naval Criminal Investigative Service investigation. Plaintiff's own curiosity is not enough. "[W]hen there is no public interest at all, the court "'need not linger over the balance; something . . . outweighs nothing every time." *Beck v. Dep't of Just.*, 997 F.2d 1489, 1494 (D.C. Cir. 1993) (quoting *Nat'l Ass'n of Retired Federal Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989)); *Marshall v. FBI*, 802 F. Supp. 2d 125, 134–35 (D.D.C. 2011) (finding that the FBI properly withheld the names and identifying information of its personnel in protection of their substantial privacy interest); *McGehee v. Dep't of Just.*, 800 F. Supp. 2d 220, 233–34 (D.D.C. 2011) (upholding 7(C) withholdings by the FBI to protect the identifying information of "FBI Agents and Support Personnel" and "Local and/or State Government Employees"); *see also Gilliam v. Dep't of Just.*, 128 F. Supp. 3d 134, 139 (D.D.C. 2015) ("[T]here can be little doubt that persons named in the documents [such as]…law enforcement agents…have a substantial privacy interest.").

Accordingly, the balancing inquiry favors withholding the information described above under Exemptions 6 and 7(C).

**D. The Withholdings Pursuant to 7(E) Are Appropriate.**

Exemption 7(E) permits withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E); *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (noting the "relatively low bar for the agency to justify withholding" information under Exemption 7(E)).

In this Circuit, "'the exemption looks not just for circumvention of the law, but for a risk

of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk.'" *Blackwell*, 646 F.3d at 42 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009)). In fact, "Exemption 7(E) sets a relatively low bar for the agency to justify withholding: 'Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'" *Id.* (alterations omitted).

The FBI asserted Exemption 7(E) to protect the sensitive file numbers and information concerning resource allocation. *See id.* ¶ 65. The FBI determined this exemption is appropriate for protecting these file classification numbers as the release of file classification numbering convention identifies the investigative interest or priority given to such matters. *Id.* ¶ 66. The file classification numbers the FBI protected appear with other identifying case information in the FOIA processing notes, and are not known to the general public. *Id.* Release of known file classification numbers in the context of investigative records would immediately reveal the types of investigations being pursued, and thus the types of investigative techniques and procedures available to FBI investigators, and/or non-public facets of the FBI's investigative strategies. *Id.* releasing non-public FBI file classification numbers would reveal critical information about non-public investigative techniques and procedures, and provide criminals and foreign adversaries the ability to discern the types of highly sensitive investigative strategies the FBI is pursuing whenever such file classification numbers are present within these and other sensitive FBI investigative records. *Id.*

Further, the FBI properly applied 7(E) to Non-public internal FBI telephone numbers and e-mail addresses within one document at Bates 4-10 consisting of FOIA processing notes. Corcoran Decl. ¶ 68. These are operational tools and procedures for personnel to exchange sensitive law enforcement or intelligence information. Disclosure of this type of information could provide criminals with specific targets for possible cyber-attacks and other types of attacks on FBI secure communications. *Id.* The FBI determined the current cyber-security environment where government data breaches and other hacking attempts on government systems are prevalent, it is likely that the release of this type of information could provide hackers with avenues to exploit the FBI's Information Technology system. *Id*.

The FBI also applied Exemption 7(E) to a part of Emergency Response Team (ERT) case summary report containing the specific allocation of resources applied to the investigation of suicide of NCIS Admiral Jeremy Boorda on one page at Bates 78. *Id*. ¶ 69. Disclosing the details about personnel and time in this criminal investigation, a potential criminal actor could devise activities designed to mirror similar needs in the future in an effort to tailor their activities or coordinate with other actors to target components with lower response capabilities, funding levels, and/or fewer resources in order to circumvent the law. *Id*. Releasing this information would provide criminals attempting to circumvent the law insight into the amount of resources allocated by the FBI for this type of investigation. *Id*.

For all of the foregoing reasons, the FBI properly applied 7(E) to the records outlined above and the foreseeable harm the FBI identified should the records become available to the general public is reasonable.

## III. <u>FBI Released All Non-Exempt and Segregable Records.</u>

An agency must take reasonable steps to segregate and release all non-exempt, reasonably segregable portions of responsive records. 5 U.S.C. § 552(a)(8)(A)(ii)(I), (b). Non-exempt portions

of responsive records need not be produced, however, if "they are inextricably intertwined with exempt portions." *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 583 (D.C. Cir. 2020) (quotation marks omitted). Under FOIA, the segregability analysis "does not call for parsing [a record] line-by-line or segregating material dispersed throughout the document. Instead, the emphasis is on segregation of non-exempt material found in logically divisible sections." *Nat'l Ass'n of Crim. Def. Lawyers v. Dep't of Just.*, 844 F.3d 246, 257 (D.C. Cir. 2016) (cleaned up). "When an agency demonstrates that records contain exempt information, as [Defendants have] done, it is entitled to a presumption that it complied with the obligation to disclose reasonably segregable material." *Flyers Rts. Educ. Fund, Inc. v. FAA*, 71 F.4th 1051, 1058 (D.C. Cir. 2023) (cleaned up). The requester may "rebut this presumption," but only if it offers "evidence that would warrant a belief by a reasonable person that the agency failed to comply with its obligation." *Id.* (cleaned up).

Because the withheld materials contain exempt information, there is "a presumption that [Defendants] complied with the obligation to disclose reasonably segregable material," and Plaintiff can offer no "evidence that would warrant a belief by a reasonable person that the agency failed to comply with its obligation," as necessary to "rebut this presumption." *Flyers Rts.*, 71 F.4th at 1058.

Here the FBI conducted a line-by-line, page-by-page review of the responsive records, and determined that 26 pages could be released in full (RIF), 88 pages could be released in part (RIP), and four pages could be withheld in full (WIF). *See* Corcoran Decl. ¶ 73. For the pages released in part, the FBI determined the 88 pages comprised a mixture of material that could be segregated for release and material that required withholdings because release would trigger foreseeable harm to one or more interests protected by the FOIA exemptions cited on each page. *See id.* For the page withheld in full, FBI determined all information on each page was covered by one or more of the

cited FOIA exemptions; therefore, there was no information that could be reasonably segregated without triggering foreseeable harm to one or more of the FOIA exemptions cited on these pages. *Id*. Accordingly, FBI satisfied its obligation to produce all reasonably segregable, non-exempt information. *See Porup v. CIA*, 997 F.3d 1224, 1239 (D.C. Cir. 2021) (agency satisfied its segregability obligation where it "attested that [it] had conducted a page-by-page and line-by-line review, and released all reasonably segregable, non-exempt information within responsive records," and "determine[ed] that no additional information may be released without divulging information that falls within the scope of one or more FOIA exemptions" (cleaned up)); *Machado Amadis v. Dep't of State*, 971 F.3d 364, 371-72 (D.C. Cir. 2020) (agency "appropriately segregated exempt and non-exempt portions" of responsive records where it "conducted a line-by-line review, determined that some non-exempt, factual information within [records] could be segregated for release, and redacted only" exempt information (cleaned up)).

* * *

## CONCLUSION

For these reasons, Defendant respectfully requests that this Court grant summary judgment in favor of the FBI.

Dated: November 4, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: */s/Kimberly A. Stratton*

KIMBERLY A. STRATTON
P.A. Bar #327725
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 417-4216
kimberly.stratton@usdoj.gov

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THOMAS WELLINGTON SIKES,

Plaintiff,

v.

FEDERAL BUREAU OF INVESTIGATION,

Defendant.

Civil Action No. 25-2922 (JMC)

**[PROPOSED] ORDER**

UPON CONSIDERATION of Defendant's motion for summary judgment, Plaintiff's cross motion for summary judgment and Defendants' opposition thereto, and the entire record herein, it is hereby

ORDERED that Defendant's motion is GRANTED;

ORDERED that Plaintiff's cross motion is DENIED; it is further

ORDERED that summary judgment is ENTERED for Defendant.

SO ORDERED:

________________
Date

______________________________
Jia M. Cobb
United States District Judge